UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of Reiko Aso for an Order
Pursuant to 28 U.S.C. § 1782 to Conduct
Discovery for Use in Foreign Proceedings.

MEMORANDUM OF LAW IN SUPPORT OF
*EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Miki Dixon & Presseau, PLLC
Matthew Presseau, Esq. (MP 6558)
122 East 42nd Street, Suite 2515
New York, New York 10168
Telephone:     (212) 661-1010
Facsimile:      (212) 661-6116
Email:           mpresseau@mdp-law.com

# **TABLE OF CONTENTS**

<u>PAGE NOS.</u>

PRELIMINARY STATEMENT……………………………………………………….....1

BACKGROUND…………………………………………………………………….....2

ARGUMENT…………………………………………………………………………5

I. PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. §1782….6

II. THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT PETITIONER THE DISCOVERY SHE SEEKS…………………………………………………………....7

III. THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE*…………10

CONCLUSION…………………………………………………………………11

# TABLE OF AUTHORITIES

PAGE NOS.

FEDERAL CASES

*Brandi-Dohrn v. IKB Deutche Industriebank AG*, 673 F. 3d 76 (2d Cir. 2012)……………....…6, 8

*In re Chevron Corp.*, No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010)………………….6, 10

*Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38 (2d Cir. 1996)……………...……………..5

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M 19099, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)……………………………………………………………………8

*In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007)……………………………………6

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)…………………………........8

*Ishihara Chemical Co., Ltd. v. Shipley Co., L.L.C.*, 251 F.3d 120 (2d Cir. 2001)………………7

*In re Republic of Kaz.*, 110 F. Supp. 3d 512 (S.D.N.Y. 2015)……………………………………6

*Marubeni America Corp. v. LBA Y.K.*, 335 Fed. Appx. 95 (2d Cir. 2009)………………………7

*In re Ruiz*, 342 F. Supp. 3d 448, 452-53 (S.D.N.Y. October 19, 2018)………………………6

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F. 3d 79 (2d Cir. 2004)…………...………..7

*Application of Sumar*, 123 F.R.D. 467 (S.D.N.Y. 1988)…………………………………9-10

FEDERAL STATUTES

28 U.S.C. § 1782………………………………………………………….………*passim*

JAPANESE STATUTES

*Minsoho* (Japanese Code of Civil Procedure, Law No. 29 of 1890), Article 184…………....8

*Minsoho*, Article 186…………………………………………………………………9

*Minsoho*, Article 297…………………………………………………………………9

*Minsoho*, Chapter 4…………………………………………………………………9

Petitioner, Reiko Aso, respectfully submits this memorandum of law in support of her *ex parte* application for an Order, pursuant to 28 U.S.C. § 1782, to conduct discovery for use in foreign proceedings. Petitioner seeks discovery from AllianceBernstein L.P. (hereinafter "AB"), Citibank, N.A. (hereinafter "Citibank"), JPMorgan Chase Bank, N.A. (hereinafter "Chase"), Bank of America, N.A. (hereinafter "BoA") and Newport Group, Inc. (hereinafter "Newport") (hereinafter collectively the "Targets").

## PRELIMINARY STATEMENT

Ms. Aso seeks production of documents, information, or objects and testimony at a deposition related to the assets of her husband, Takeo Aso, from third parties in this jurisdiction for use in the proceeding, TAKEO ASO, Plaintiff/Appellee against REIKO ASO, Defendant/Appellant, presently pending before the Tokyo High Court, Tokyo, Japan (hereinafter the "Proceeding"). The Proceeding is an appeal from the judgment of the Tokyo Family Court in the divorce proceeding, TAKEO ASO, Plaintiff, against REIKO ASO, Defendant. Under the Japanese Civil Procedure Law, the Tokyo High Court will accept and consider new evidence on appeal. Presseau Decl. Ex. 4, ¶¶ 10-12. One of Ms. Aso's grounds for appeal is that the Family Court's judgment is based on an incomplete record of Mr. Aso's net worth. Presseau Decl. Ex. 4, ¶ 3; Ex. 5. The discovery sought is necessary and highly relevant to the proceeding before the Tokyo High Court because evidence of Mr. Aso's undisclosed assets will support Ms. Aso's arguments on appeal. Presseau Decl. Ex. 4, ¶ 3. Petitioner's application is limited, seeking only information and documents related to Mr. Aso's assets and liabilities, and the terms and conditions of his employment and his compensation. Notably, if the underlying divorce proceeding had been before the New York State courts, there would be no question that the information and documents presently sought would be discoverable.

1

The statutory requirements that allow this Court to grant an application under 28 U.S.C. §1782 are satisfied and the circumstances presented here weigh in favor of the Court exercising its discretion to do so. Petitioner respectfully requests that the Court endorse the proposed Order annexed to the Declaration of Matthew Presseau, Esq., dated April 11, 2019, as Exhibit 1 granting Petitioner leave to serve the subpoenas annexed to the Presseau Declaration as Exhibit 2.

## BACKGROUND

Ms. Aso is a Japanese citizen with a U.S. "green card." She presently resides in Tokyo, Japan, but has lived in Baltimore, Boston and New York. Most recently, she lived in New York City from 1998 through 2005. Mr. Aso is also a Japanese citizen, presently residing in London. Presseau Decl. Ex. 3, ¶¶3, 11.

Ms. and Mr. Aso married on July 26, 1997, in Japan. Shortly after marrying, Mr. Aso commenced employment with the investment-management firm, Sanford C. Bernstein, now known as AllianceBernstein (hereinafter "AB"), and moved to New York. Ms. Aso was transferred to New York by her employer in 1998 and Mr. and Ms. Aso resided together in New York for the next few years. Presseau Decl. Ex. 3, ¶5.

In March of 2002, Mr. Aso was transferred to Tokyo by AB to set up a branch office and moved there. Ms. Aso remained in New York working full time for her employer. The couple maintained residences in New York and Tokyo together and traveled back and forth frequently. Shortly after Mr. Aso's transfer, Ms. Aso became pregnant, and although she wanted to move back to Japan, her pregnancy was difficult and she stayed in New York to remain under the care of her obstetrician with Mr. Aso's encouragement. Presseau Decl. Ex. 3, ¶6.

The couple's daughter, Sasha, was born in New York on July 26, 2003. After taking five weeks of maternity leave, Ms. Aso returned to work full time in September 2003. In the Spring of

2004, Ms. Aso learned that Mr. Aso had been having an affair with his colleague in Tokyo. Ms. Aso was devastated because she believed that their marriage had been happy to that point. Ms. Aso asked Mr. Aso to end the affair and work on their marriage and Mr. and Ms. Aso resumed their frequent travel back and forth, now with their daughter in the picture. Presseau Decl. Ex. 3, ¶7.

Ms. Aso made preparations to move to Tokyo in the Spring of 2005. In the Fall as she and Sasha were about to move, Mr. Aso filed for a divorce in Tokyo Family Court. He also gave up the family residence in Tokyo without Ms. Aso's consent so that when she and Sasha arrived a short time after, they had no place to live. Presseau Decl. Ex. 3, ¶8.

Ms. Aso opposed Mr. Aso's application for divorce and the Tokyo Family Court denied the application as Mr. Aso had no grounds based on his infidelity. The Family Court ordered that Ms. Aso have physical custody of Sasha and ordered Mr. Aso to financially support mother and child. Other than the court ordered support, Mr. Aso completely abandoned Ms. Aso and Sasha. Presseau Decl. Ex. 3, ¶8.

Meanwhile, Sasha was not doing well and frequently ill, vomiting, screaming through the night, exhibiting lethargy, changes in personality, and was not able to properly walk or talk. Doctors could not determine what was wrong until July 2007 when she was diagnosed with ornithine transcarbamylase deficiency ("OTC deficiency"), a very rare metabolic disorder. After Mr. Aso learned about Sasha's diagnosis, he stopped paying financial support and refused to pay until a claim was made on his salary from AB. Presseau Decl. Ex. 3, ¶9.

In 2008, Sasha's doctors advised Mr. and Ms. Aso that Sasha would need a liver transplant to live. Ms. Aso volunteered to be a live donor and was confirmed as a match. However, the transplant could not be performed because Mr. Aso did not give his required consent. Sasha's

3

condition deteriorated over the next few years, suffering nausea, headaches, vomiting and repeated episodes of hyperammonemia, requiring several hospital stays. In 2013, Sasha had a severe episode of hyperammonemia, she slipped into a coma and died. Presseau Decl. Ex. 3, ¶10.

When Ms. Aso called Mr. Aso to notify him of their daughter's death, she learned he had moved to London. He did not attend Sasha's funeral. Presseau Decl. Ex. 3, ¶11.

On March 11, 2016, Mr. Aso commenced a proceeding before the Tokyo Family Court seeking a divorce, arguing that since they no longer had a child in common, divorce was now appropriate. Ms. Aso objected on April 13, 2016, arguing that Mr. Aso had no grounds for divorce because of his infidelity, abuse of Ms. Aso, and gross neglect of their minor daughter. On January 27, 2017, on the prompting of the Family Court, Ms. Aso asked the Family Court to divide the marital assets in the event they decided to grant divorce. Presseau Decl. Ex. 3, ¶12; Ex. 4, ¶2.

During the contentious proceedings, Mr. Aso submitted memoranda and gave testimony under oath in court about his employment with AB and its affiliates, and his net worth, but only selectively. He only produced a few account statements for assets with AB from 2005. Ms. Aso demanded that Mr. Aso fully disclose his assets on several occasions, and the Family Court instructed Mr. Aso to submit documentation in support of his claims and explanations, but he did not do so. Notwithstanding, the evidence before the Family Court suggests that Mr. Aso has owned and continues to own a diversified portfolio of bank accounts and investments in stocks, mutual funds, hedge funds, start-ups and real estate, some of which appear to be located in New York. On March 4, 2019, despite having an incomplete record of Mr. Aso's net worth, the Tokyo Family Court rendered a judgment granting divorce and dividing the marital property, ordering Mr. Aso to pay Ms. Aso 100 million Japanese Yen (approximately $900,000.00). Presseau Decl. Ex. 3, ¶¶13-15; Ex. 4, ¶¶2-4.

On March 18, 2019, Ms. Aso timely appealed the judgment of the Tokyo Family Court to the Tokyo High Court. On appeal, Ms. Aso is arguing that the Family Court's judgment should be reversed because it is based on an incomplete record of Mr. Aso's assets. The information presently sought would be presented to the Tokyo High Court in support of Ms. Aso's appeal. Presseau Decl. Ex. 3, ¶15, Ex. 4. ¶¶2-3.

## ARGUMENT

Pursuant to 28 U.S.C. § 1782 federal courts may grant discovery within the United States for use in a foreign proceeding. The statute provides in relevant part, "The district court of the district in which a person resides or is found may order him to give testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal… The order may be made… upon the application of any interested person… to the extent that the order does not prescribe otherwise,… the document… [shall be] produced in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782.

The goals of the statute, "are to provide equitable and efficacious discovery procedures in United States courts for the benefit of tribunals and litigants involved in international litigation, and to encourage foreign countries by example to provide similar means of assistance to [United States] courts." *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (internal quotations omitted). "In pursuit of these twin goals, the section has, over the years, been given increasingly broad applicability." *Id.* (internal quotation marks omitted).

If the statutory requirements of 28 U.S.C. § 1782 are satisfied, a Court has discretion to grant an application for discovery. The statutory requirements are satisfied in this case and the factors to be considered in determining whether the Court should exercise its discretion weigh in favor of granting Petitioner an opportunity to seek discovery in this jurisdiction. AB will not be

prejudiced if the Court grants this *ex parte* application because they will have an opportunity to challenge the subpoena once it is served. *In re Chevron Corp.*, No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010) ("Applications pursuant to 28 U.S.C. § 1782 frequently are granted *ex parte*. Where, as here, the application is for the issuance of subpoenas, no substantial rights of the subpoenaed person are implicated by such action, as the subpoenaed person, once served, is entitled to move to quash or modify the subpoenas.").

## I. PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Courts may grant an application made pursuant to 28 U.S.C. § 1782 where, "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutche Industriebank AG*, 673 F. 3d 76, 80 (2d Cir. 2012). See *In re Republic of Kaz.*, 110 F. Supp. 3d 512, 514 (S.D.N.Y. 2015).

A corporation resides in the district if it is either incorporated or headquartered there. Alternatviely, a corporation is *found* in a district if it engages in systematic and continuous local activities that satisfy personal jurisdiction requirements. *In re Ruiz*, 342 F. Supp. 3d 448, 452-53 (S.D.N.Y. October 19, 2018). See also *In re Kaz.*, 110 F. Supp. 3d at 515, *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007). Satisfying the first requirement, the Targets all have either executive offices or maintain places of business in this district and conduct systematic and continuous activities in this district. AB has their principal executive office at 1345 Avenue of the Americas, New York, NY 10105. Citibank, N.A., has numerous retail bank locations in this district and maintain executive offices at 388 Greenwich St., New York, NY. Bank of America, N.A., has numerous retail bank locations in this district and maintains executive offices at 115 W. 42nd St.

6

New York, NY. J.P. Morgan Chase Bank, N.A., has their principal executive office at 270 Park Avenue, New York, NY 10017. Newport Group, Inc., maintains an office at 570 Lexington Avenue, Suite 1903, New York, NY 10022. Presseau Declaration, Ex. 5, ¶ 5; and Ex. 6.

The Second Circuit has recognized that proceedings before Japanese courts and other Japanese tribunals meet the requirement of a, "foreign proceeding before a foreign tribunal." *Marubeni America Corp. v. LBA Y.K.*, 335 Fed. Appx. 95, 96-97 (2d Cir. 2009) (action before the Tokyo District Court recognized as "foreign proceeding before a foreign tribunal"); *Ishihara Chemical Co., Ltd. v. Shipley Co., L.L.C.*, 251 F.3d 120 (2d Cir. 2001) (action before the Japanese Patent Office recognized as "foreign proceeding before a foreign tribunal"; notwithstanding, the Second Circuit concluded that the petition should be dismissed as moot because opportunity to submit evidence has already passed). The second statutory requirement is satisfied because the discovery sought is for use in an action pending before the Tokyo High Court, Tokyo, Japan.

Finally, Petitioner meets the third statutory requirement of an "interested person" as she is the Defendant/Appellant in the action pending before the Tokyo High Court. Presseau Decl. Ex. 3, ¶¶12-15; Ex. 4, ¶¶2-3, Ex. 5.

The statutory elements necessary to permit the Court to order discovery pursuant to 28 U.S.C. § 1782 are all present here.

## II. THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT PETITIONER THE DISCOVERY SHE SEEKS

"Once the statutory requirements [28 U.S.C. § 1782] are met, a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F. 3d 79, 83-84 (2d Cir. 2004). The Supreme Court identified factors that courts are to consider on an application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the

receptivity of the foreign court to federal court assistance; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004); *Brandi-Dohrn*, 673 F.3d at 80-81. All factors weigh in favor of granting Petitioner's application.

First, none of the Targets are a party to the proceeding before the Tokyo High Court. Only Mr. and Ms. Aso are parties to their divorce proceedings. The Supreme Court has explained, "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 264 (internal citations omitted). The Supreme Court's concern is applicable here where the Tokyo High Court does not have jurisdiction over the Targets and therefore has no means of compelling production of the discovery Petitioner seeks.

Second, the Court should consider the nature of the foreign proceeding and the receptivity of the foreign tribunal to federal court assistance. Interpreting this factor, the Court's consideration is "(1) whether United States assistance would offend the foreign country, and (2) whether the material sought is admissible in the foreign tribunal." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M 19099, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006). Both considerations may be answered in the affirmative. The Japanese Code of Civil Procedure provides for evidence gathering and examination in foreign jurisdictions and authorizes High Courts to accept any evidence considered relevant to a case. Presseau Decl. Ex. 4, ¶¶ 10-12. For instance, Article 184 provides, "The examination of evidence to be conducted in a foreign state shall be

8

commissioned to the competent government agency of that state…" Presseau Decl. Ex. 4, ¶12. Article 186 provides, "The court may commission a… foreign government agency or public office… to conduct a necessary examination." Presseau Decl. Ex. 4, ¶12. Article 297 and Chapter 4 set forth the rules for the high courts and allow the Tokyo High Court to accept new evidence on appeal. While these statutes contemplate the court's direct involvement in the evidence gathering procedures, either on its own initiative or on petition of a litigant, the Japanese courts will accept any evidence they consider relevant to the case. In theory these provisions establish procedures to gather evidence in foreign jurisdictions, but in practice they are onerous and limited due to the necessity of relying on diplomatic channels and the limitations of the diplomatic agreements between Japan and the United States. The salient point is that Japanese courts will accept and consider evidence gathered in foreign jurisdictions. The Tokyo Family Court in fact accepted and considered evidence of AB accounts produced by Mr. Aso obtained from AB in New York, and the Tokyo High Court will do so as well. Presseau Decl. Ex. 4, ¶10.

Third, the present application is not an attempt to circumvent any foreign proof-gathering restrictions. As discussed above, the Japanese courts will accept evidence considered relevant to the case and the Japanese Code of Civil Procedure specifically contemplates and provides for evidence gathering in foreign jurisdictions. Clearly, the instant petition is not an attempt to circumvent proof-gathering restrictions in Japan.

Finally, this application is not burdensome. Petitioner is seeking readily available information such as documents memorializing terms of employment and compensation, asset and liability related disclosures and requests required by Mr. Aso's employer, and customer records kept in the ordinary course of business by the Targets. These subpoenas would be routine and free of controversy in a New York State divorce action. *See Application of Sumar*, 123 F.R.D. 467,

9

472-73 (S.D.N.Y. 1988) (finding that a subpoena and Order issued pursuant to 28 U.S.C. § 1782 were "neither unreasonable nor oppressive" where they were "sufficiently specific" and specified "with reasonable particularity the subjects to which the documents relate"). Ms. Aso has requested account information from AB for the same time periods contemplated in the subpoenas and received the information within days. Providing Petitioner with the documents and information she seeks will require the same effort as a response to any account holder's request for their account documents.

The facts in this case amply support the exercise of discretion to grant Petitioner's instant application for leave to serve the subpoenas annexed as Exhibit 2 to the Presseau Declaration.

## III. THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE*

The Court should grant the instant application *ex parte* as doing so would not prejudice any of the Targets. As the court noted: "Applications pursuant to 28 U.S.C. § 1782 frequently are granted *ex parte*. Where, as here, the application is for the issuance of subpoenas, no substantial rights of the subpoenaed person are implicated by such action, as the subpoenaed person, once served, is entitled to move to quash or modify the subpoenas." *In re Chevron Corp.*, No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6 2010). The Targets would not be prejudiced by granting the Petitioner's application *ex parte* as they will have the opportunity to challenge the subpoenas once they are served. Accordingly, this Court should grant Petitioner leave, *ex parte*, to serve the subpoenas annexed as Exhibit 2 to the Presseau Declaration.

**CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests the Court to endorse the

Proposed Order annexed to the Presseau Declaration as Exhibit 1, which grants leave, pursuant to

28 U.S.C. §1782, to serve the subpoenas annexed to the Presseau Declaration as Exhibit 2.

Dated: New York, New York
　　　　April 12, 2019

Respectfully submitted,

Matthew Presseau (MP 6558)
MIKI DIXON & PRESSEAU, PLLC
*Attorneys for Petitioner Reiko Aso*
122 East 42nd Street, Suite 2515
New York, NY 10168
Telephone:　　(212) 661-1010
Facsimile:　　(212) 661-6116
Email:　　　　mpresseau@mdp-law.com