UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                              :

IN RE APPLICATION OF REIKO ASO FOR :
AN ORDER PURSUANT TO            :
28 U.S.C. § 1782 TO CONDUCT       :
DISCOVERY FOR USE IN FOREIGN    :
PROCEEDINGS.                     :
                              :
----------------------------------------------------------X

**OPINION AND ORDER**

19 MC 190 (JGK) (JLC)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __06/03/2019__

**JAMES L. COTT, United States Magistrate Judge.**

     Before the Court is an application submitted by Petitioner Reiko Aso ("Petitioner" or "Reiko") for an order to obtain discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782. Petitioner requests leave to serve subpoenas on AllianceBernstein L.P. ("AB"), Citibank, N.A. ("Citibank"), JPMorgan Chase Bank, N.A. ("Chase"), Bank of America, N.A. ("BoA"), and Newport Group, Inc. ("Newport"). The subpoenas seek evidence in connection with divorce proceedings currently pending in the Tokyo High Court between Petitioner and Respondent Takeo Aso ("Respondent" or "Takeo"). For the reasons set forth below, Petitioner's application is granted.

## I.  BACKGROUND

### A.  Prior Proceedings in Japan

     The following facts are taken from the parties' submissions. Reiko and Takeo married in Japan on July 26, 1997. Declaration of Matthew Presseau, Esq., dated April 11, 2019 ("Presseau Decl."), Exhibit ("Exh.") 5 (Affidavit of Reiko Aso dated April 2, 2019 ("Reiko Aff."), at ¶ 5), Dkt. No. 4-3. Immediately after the couple

married, Takeo commenced employment with AB in New York City. *Id.*;
Memorandum of Law in Opposition ("Opp."), Exh. B (Affidavit of Takeo Aso dated
May 16, 2019 ("Takeo Aff."), at ¶ 6), Dkt. No. 18. After requesting a transfer to New
York from her own employer, Reiko followed suit in 1998. Reiko Aff. at ¶ 5. In
2002, after several years in New York, Takeo was transferred by AB to Tokyo to set
up a local branch for the company. *Id.* at ¶ 6; Takeo Aff. at ¶ 6. Not long after
Takeo's transfer, Reiko learned she was pregnant with their child. She wished to
join her husband in Japan but was not able to move back due to a difficult
pregnancy. Reiko Aff. at ¶ 6. On July 26, 2003, Reiko gave birth in New York to
the couple's daughter Sasha. *Id.* at ¶ 7.

Less than a year after giving birth, in the spring of 2004, Reiko learned that
Takeo had been having an affair with a colleague in Tokyo, *id.*, though Takeo claims
his relationship with Reiko had already broken down by then. Takeo Aff. at ¶ 10.
According to Reiko, the couple attempted to work on their marriage, Reiko Aff. at
¶ 7, but Takeo ultimately filed for divorce in December 2005. Takeo Aff. at ¶ 5.
However, the Tokyo Family Court denied Takeo's application for divorce. *Id.*; Reiko
Aff. at ¶ 8.

More than a decade later, on March 11, 2016, Takeo again filed for divorce.
Reiko Aff. at 12; Takeo Aff. at ¶ 4. During the divorce proceedings, Takeo claims to
have provided the court with financial records through the date of separation in
2005. Takeo Aff. at ¶¶ 8, 18. Takeo contends that under Japanese law, "a married
couple does not need to disclose assets of each party beyond the date of the couple's

separation." *Id.* at ¶ 8.  Reiko, however, suspects Takeo moved marital assets to undisclosed accounts around the time of his affair.  Reiko Aff. at ¶ 13.  According to Reiko's Japanese counsel, Atsushi Shiraki, Japanese civil procedure provides for gathering not only new evidence but also evidence in foreign jurisdictions.  Presseau Decl., Exh. 4 (Affidavit of Atsushi Shiraki dated April 2, 2019 ("Shiraki Aff."), at ¶¶ 10–12).  Japanese practitioner and former judge Masyuki Otsuka, Esq. further explains that Reiko may be entitled to "property obtained through the cooperation of both parties" which "continued even after the separation date."  Memorandum of Law in Reply ("Reply"), Exh. 7 (Affidavit of Masyuki Otsuka, Esq., dated May 22, 2019 ("Otsuka Aff."), at ¶¶ 7–9, 13–14), Dkt. No. 21-1.  Otsuka adds that "for distribution of property, the court considers not only the 'amount of property obtained through the cooperation of both parties' but also 'all other circumstances'; the amount of property obtained by each party will be included in 'all other circumstances' up to the end of the oral argument."  *Id.* at ¶ 8.  Nonetheless, when Reiko petitioned the Tokyo Family Court in December 2017 to order disclosure of Takeo's financial record through the end of 2017, her petition was summarily denied.  Takeo Aff. at ¶ 18; Opp., Exh. G.

On March 4, 2019, the Tokyo Family Court rendered final judgment granting divorce, dividing marital assets, and ordering Takeo to pay Reiko a lump sum of one million Japanese yen.  Opp., Exh. C; Reiko Aff. at ¶ 15.  Reiko timely appealed the Tokyo Family Court's judgment to the Tokyo High Court on March 18, 2019, on the

ground that the judgment was rendered based on an incomplete net worth record submitted by Takeo.  Reiko Aff. at ¶ 15.

**B. The Application in this Court**

On April 12, 2019, Reiko filed an *ex parte* application in this Court, seeking an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in her appeal. *See Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings ("Application"), Dkt. No. 1; Memorandum of Law ("Pet. Memo."), Dkt. No. 4.  Specifically, Reiko seeks document production from the New York offices of Citibank, Chase, BofA, and Newport, with which Reiko claims her ex-husband held banking and/or investment accounts.  *See* Application at 1–2; Presseau Decl., Exh. 2.[1]  Reiko also seeks document production and deposition testimony from New York-based AB, from which she had previously acquired information in the Japanese proceedings, to obtain additional evidence related to Takeo's employment and compensation.  *See* Application at 1–2; Presseau Decl., Exh. 2.

Pursuant to the Court's Order dated April 19, 2019, *see* Dkt. No. 6, Reiko served the Application on all interested parties, including AB, Citibank, Chase, BofA, and Newport.  *See* Dkt. Nos. 11–15.  Takeo filed his opposition papers on May 17, 2019, arguing that the statutory elements for approving an application under § 1782 have not all been met, certain discretionary factors weigh against ordering the sought-for discovery, and the objective underlying the statute would not be

---

[1] The proposed subpoenas to these non-parties are attached as an exhibit to the Presseau declaration.  *See* Presseau Decl., Exh. 2.

advanced if the relief Reiko is seeking was granted. *See* Opp. at 1–3. No other party has submitted any papers in response to the Application.

By Order dated May 3, 2019, this Application was referred to me for resolution. *See* Dkt. No. 7. I have authority to decide Petitioner's request for discovery under § 1782 by means of an Opinion and Order as it is a non-dispositive matter. *See, e.g., In re Hulley Enters., Ltd.*, 358 F. Supp. 3d 331, 341–42 (S.D.N.Y. 2019) (application brought under 28 U.S.C. § 1782 is "non-dispositive" matter within meaning of Fed. R. Civ. P. 72(b) and thus may be decided by Opinion and Order).

## II.  DISCUSSION

### A. Legal Standards

Under 28 U.S.C. § 1782, "[t]he district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . [t]he order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court." 28 U.S.C. § 1782(a). Accordingly, a district court has jurisdiction to grant an application under 28 U.S.C. § 1782 if the following statutory requirements are met:

> (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person.

*Kiobel by Samkalden v. Cravath, Swaine & Moore, LLP*, 895 F.3d 238, 243 (2d Cir. 2018) (citation omitted); *see also In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006) (citing *Schmitz v. Bernstein, Liebhard & Lifshiftz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004)).

If the statutory requirements are met, a district court, in its discretion, may grant the application. *Kiobel*, 895 F.3d at 244. The Supreme Court has identified four discretionary factors (referred to below as the *Intel* factors) a district court may consider when ruling on a § 1782(a) request: (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the § 1782 application contains unduly intrusive or burdensome discovery requests. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). Courts must exercise their discretion in light of the "twin aims" of § 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." *Intel*, 542 U.S. at 252 (citation omitted).

### B. Statutory Elements

The Court has reviewed Reiko's application and determined that all of the statutory requirements have been satisfied. Each element will be addressed in turn below.

#### 1. Residency Requirement

Section 1782 provides that "[t]he district court of the district in which a person resides or is found" may order discovery to be taken from that person. 28 U.S.C. § 1782(a). Based on the evidence that was provided, the Court finds that Citibank, Chase, BofA, and Newport are found in the Southern District of New York. *See* Presseau Decl., Exh. 6 (Proof of Residence). Takeo does not dispute that these entities are found in this District.

Moreover, the Court finds that AB listed Manhattan as its global headquarters in its most recent SEC disclosure. *See id*. Takeo acknowledges that AB, by whom he was previously employed, is found in this District but claims he now works for its U.K. subsidiary (AllianceBernstein Ltd.) and previously worked for its Japanese subsidiary (AllianceBernstein Japan). Takeo Aff. at ¶ 6. Thus, according to Takeo, Petitioner's request for documents related to his employment with AB's U.K. and Japanese subsidiaries fails to satisfy the first requirement of § 1782. *See* Opp. at 13.

The Court is not persuaded by this argument. That Takeo is (and was) employed by AB's foreign subsidiaries does not necessarily mean that AB itself, as the corporate parent, does not possess any relevant documents. Typically, the

distinction between the parent and its subsidiaries would prevent the discovery of the foreign subsidiaries' documents simply by serving the United States parent company. *See, e.g., Carte Blanche (Singapore) Pte, Ltd. v. Diner's Club Int'l, Inc.*, 2 F.3d 24, 45 (2d Cir. 1993) ("Generally speaking, a parent corporation and its subsidiary are regarded as legally distinct entities and a contract under the corporate name of one is not treated as that of both."). Takeo, however, commenced his employment with the corporate parent in New York before being transferred to Tokyo to set up a branch office. Takeo Aff. at ¶ 6. Moreover, AB had apparently been able to obtain documents from its Japanese subsidiary without difficulty when it provided them in the earlier proceeding in Japan. *See* Pet. Memo at 10; Reiko Aff. at ¶ 17; Opp. at 12. Even if Takeo now works for its London office, AB appears to have the ability to obtain documents from its foreign subsidiaries such that they would be in the District for production in response to the subpoena. However, to the extent the AB subpoena seeks discovery of documents or other information that is not located in this District, such evidence is beyond the reach of a § 1782 subpoena. *See, e.g., Purolite Corp. v. Hitachi America, Ltd.*, No. 17-MC-67 (PAE), 2017 WL 1906905, at *2.

For these reasons, the Court finds that the entities from which Reiko seeks discovery are all located in this District.

## 2. For Use in a Foreign or International Tribunal

The Court next considers whether the judicial assistance sought by Reiko satisfies the requirement "for use in a proceeding in a foreign or international

tribunal." 28 U.S.C. § 1782(a). Reiko asserts that the discovery will be used in the appeal pending before the Tokyo High Court. *See* Pet. Memo. at 7; Reiko Aff. at ¶ 4. Takeo contends that the information Reiko seeks will not be for use in the Japanese proceeding because (1) Japanese appellate courts do not consider new evidence; (2) he has already submitted the required information and therefore the information Reiko seeks is not relevant; and (3) the Tokyo High Court, if petitioned by Reiko with a similar discovery request, may not review such a request. *See* Opp. at 8–9.

Takeo appears to conflate admissibility of the evidence with "use in a proceeding." To be clear, § 1782 contains no requirement that particular evidence be admissible in an ongoing foreign proceeding. Contrary to Takeo's assertions, the Second Circuit has never held that in order for discovery sought pursuant to § 1782 to be "for use" in a foreign proceeding, it must be admissible under the rules of the foreign tribunal. Rather, "[i]n analyzing the second element . . . [the Circuit has] . . . previously focused on two questions: (1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998).

Moreover, construing § 1782's "for use" provision to contain an admissibility requirement would run counter to the Second Circuit's admonition against reading additional barriers into the plain language of § 1782. *See In re Application of Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993) (declining to read foreign discoverability requirement into plain language of § 1782 and observing that "[a]s we recently made clear in *Malev*, we are not free to read extra-statutory barriers to

discovery into section 1782.") (citing *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)). Such a construction would also require district courts to predict or construe the substantive law of the foreign jurisdiction, which would place a "significant burden on the litigants and the federal district courts," and "would seem to exceed the proper scope of section 1782." *Euromepa v. S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995) (citing *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 (3d Cir. 1985); Walter B. Stahr, *Discovery Under 28 U.S.C. § 1782 for Foreign and International Proceedings*, 30 Va. J. Int'l. L. 597, 613 (1990)).

The Court, therefore, agrees with those courts that have considered the issue and concluded that discovery assistance pursuant to § 1782 is not dependent upon the ultimate admissibility in the foreign jurisdiction of the evidence sought. *See, e.g., In re Application of Grupo Qumma*, No. M8-85 (DC), 2005 WL 937486, at *2 (S.D.N.Y. April 22, 2005) ("for use" requirement not "limited to the actual receipt of materials into evidence in the foreign proceedings. It is sufficient that the evidence will be offered by [Petitioner]; that constitutes 'for use.'"). The evidence being sought through this § 1782 application is "for use" in proceedings before the Tokyo High Court, which qualifies as a "proceeding in a foreign . . . tribunal." *Intel*, 542 U.S. at 257–58. The Court concludes that the evidence sought by Reiko is "for use" in a proceeding before a foreign tribunal.

### 3. Interested Person

The Court next considers whether Reiko is an "interested person" within the meaning of the statute. Section 1782 provides that the district court may issue an order for discovery "upon the application of any interested person." 28 U.S.C. § 1782(a). In *Intel*, the Supreme Court provided, "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." 542 U.S. at 256.

In this case, Reiko meets the "any interested person" standard of § 1782(a) because she is a party in the divorce proceedings pending before the Tokyo High Court. Reiko thus has a significant interest in obtaining judicial assistance and satisfies this element.

## C. Discretionary Factors

As set forth in the previous section, the Court has concluded that Reiko has met the statutory requirements of § 1782(a). However, a district court is not required to grant a § 1782(a) application simply because it has the authority to do so. *Id.* at 264. Rather, once the statutory requirements are met, a district court has discretion to determine whether, and to what extent, to honor a request for assistance under § 1782. *See id.* If the district court permits discovery under § 1782, it "may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country," for taking testimony or producing documents. 28 U.S.C § 1782(a). The district court should consider the statute's goals discussed *supra* at 6.

Applying the *Intel* factors to this case, the Court concludes that Reiko's application should be granted.

### 1. Jurisdictional Reach of Foreign Tribunal

The first *Intel* factor provides:

> when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence . . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264. Here, the material sought to be subpoenaed may not be accessible by means other than § 1782, because none of the subpoena targets is a party to the pending litigation in Japan and thus may not be within the Japanese courts' jurisdictional reach. This factor favors allowing Reiko to obtain the discovery she seeks.

### 2. Nature and Receptivity of Foreign Tribunal

The second *Intel* factor provides that a district court ruling on a § 1782(a) request may consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id.* Notably, however, a district court's production-order authority is not limited to "materials that could be discovered in the foreign jurisdiction if the materials were located there." *Id.* at 260. Absent objection to U.S. federal-court judicial assistance, such a

categorical restriction would undermine § 1782(a)'s objective to assist foreign tribunals in obtaining relevant information that is unavailable under their own laws. *Id.* at 261–62.

Reiko posits—and her Japanese counsel corroborates—that "Japanese courts will accept and consider evidence gathered in foreign jurisdictions," citing Articles 184 and 186 of the Japanese Code of Civil Procedure. *See* Pet. Memo. at 8–9; Shiraki Aff. at ¶¶ 11–12. Reiko and her counsel also point to Article 297 and Chapter 4 of the Japanese Code as authorization for courts to accept new evidence on appeal. *See* Pet. Memo. at 9; Shiraki Aff. at ¶ 10. Former Judge Otsuka, Reiko's other legal expert, similarly maintains that the Tokyo High Court "will be receptive to [evidence] so long as [it] is relevant." *See* Reply at 7; Otsuka Aff. at ¶ 6.

Reiko has provided sufficient evidence that Japanese courts could entertain a request to consider the newly discovered evidence once produced by the targets. *See Grupo Qumma*, 2005 WL 937486, at *3 (applicant need only have a "fair argument that it should be given the opportunity to ask the [foreign] court to reconsider. [Applicant] would still use the [new] evidence to try to persuade the [foreign] court to change its ruling and accept the evidence as 'supervening' evidence.").

In his opposition, Takeo directs the Court's attention to the fact that Reiko had previously sought similar evidence in a discovery request made to the Tokyo Family Court, which declined to grant it. In light of this fact, Takeo argues that "the U.S. court's assistance" in allowing Reiko to seek evidence that the Tokyo

Family Court did not allow "may offend the Japanese judicial system." *See* Opp. at 10.[2]

However, the Court need not decide whether the documents will be admissible in Japan to be discoverable here—the decision on admissibility is better suited for the Japanese courts. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("Accordingly, as a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application.") (emphasis in original). The Second Circuit has made clear that district courts should avoid undertaking "an extensive examination of foreign law" that would likely lead to a "superficial" ruling based on "a battle-by-affidavit of international legal experts." *Euromepa*, 51 F.3d at 1099. Thus, courts should only find that the requested material would not be discoverable in the foreign proceeding if the opponent of the § 1782 application presents "authoritative proof" in the form of a "judicial, executive or legislative declaration" from the forum country "that specifically address the use of evidence gathered under foreign procedures." *Id.* at 1100. *See In re Application of OOO Promnefstroy*, No. M19-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) ("[C]ourts must look for 'authoritative proof' that the foreign jurisdiction would reject the § 1782 assistance.") (citing *Euromepa*, 51 F.3d at 1100); *In re Application of*

---

[2] Takeo highlights this fact in addressing the third *Intel* factor, but the Court construes his claim as bearing on the second *Intel* factor.

*Gemeinschaftspraxis Dr. Med. Schottdorf*, No. M19-99 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (same).

By contrast, proof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery. *See, e.g., Grupo Qumma,* 2005 WL 937486, at * 3 (granting § 1782 discovery application where foreign court's receptiveness to discovery in dispute). Rather, in such cases the Second Circuit has instructed that district courts generally should err on the side of permitting the requested discovery. *See Euromepa,* 51 F.3d at 1101. Such a liberal construction owes to the availability of corrective measures abroad; for example, the foreign tribunal may simply choose to exclude or disregard the discovered material should that tribunal find that the district court overstepped its bounds in ordering the discovery. *See Euromepa,* 51 F.3d at 1101; *Grupo Qumma,* 2005 WL 937486, at *3.

Here, Takeo relies on the decision of the Tokyo Family Court—which denied Reiko's discovery request—to argue that that court's sovereignty would be undermined, and its decision effectively overruled, if discovery were now permitted. Yet the Tokyo Family Court denied Reiko's request without providing any explanation. The Court therefore cannot say that its decision constitutes authoritative proof that Japanese courts would reject evidence gathered with the assistance of discovery under § 1782, or that the refusal to order further disclosure from Tokyo signals a "lack of receptivity" to "U.S. federal-court judicial assistance" such that the Court should use its discretion to deny Reiko's request for discovery.

*See Intel*, 542 U.S. at 262 ("A foreign tribunal's reluctance to order production of materials present in the United States . . . may signal no resistance to the receipt of evidence gathered pursuant to § 1782(a).").

The Court also declines to undertake a "speculative foray," *Euromepa*, 51 F.3d at 1099–1100, into unfamiliar legal territory in an attempt to determine the extent to which a Japanese court would be receptive to evidence gathered pursuant to outside discovery assistance under § 1782. Because Takeo has not offered "authoritative proof" that the Tokyo High Court would not be receptive to the discovery requested, and because the Japanese court can protect itself from the effects of any unwanted discovery by simply refusing to admit the evidence, the Court concludes that the second factor does not weigh against an exercise of discretion in Reiko's favor.

### 3. Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies

The third *Intel* factor seeks to identify "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65. However, § 1782 "contains no foreign-discoverability requirement." *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015). Indeed, "nothing in the text of [Section] 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Intel*, 542 U.S. at 260. Thus, to demonstrate circumvention, Takeo must illustrate not merely that the requested documents are

not obtainable through Japanese procedures, but that Reiko is engaged in a bad faith endeavor to misuse § 1782.

For the same reason he argues that Japanese courts would not be receptive to U.S. federal-court judicial assistance, Takeo presses the point that Reiko is attempting to circumvent Japanese proof-gathering restrictions because her request for discovery failed in Japan and she is now using § 1782 to avoid the Tokyo Family Court's unfavorable discovery decision. *See* Opp. at 10. He further speculates that the Tokyo Family Court was "satisfied with [his] record producing." *See id.* at 8. Reiko counters that the Tokyo Family Court denied her application "without explanation and the reason could be any number of concerns." *See* Reply at 6. On the present record, the Court does not accept Takeo's assessment. It is unclear whether the Japanese court had the authority to order discovery from non-parties who reside outside the court's jurisdiction, and resort to § 1782 may be the only avenue by which Reiko can obtain the discovery she seeks. Reiko's request for assistance may therefore reflect a reasonable effort to overcome a technical discovery limitation.

Takeo also argues that Reiko had ample time to seek further relief in Japan if she wished, and that failing to exercise rights available in Japan and then rushing to the United States for last-minute relief constitutes an end-run around foreign proof-gathering restrictions. *See* Opp. at 10–11 (citing *Aventis Pharma v. Wyeth*, No. M-19-70 (DAB), 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009)). This argument is without merit. As an initial matter, *Aventis Pharma* is distinguishable

in that the applicant there "never sought the § 1782 documents in the [foreign] tribunal," which apparently had jurisdictional reach over these documents, 2009 WL 3754191, at *1, whereas Reiko had already asked a court to order additional discovery. It is true that Reiko received an adverse decision. However, there is no indication that the Tokyo Family Court had jurisdictional reach over the documents. Moreover, the Tokyo High Court may come to a different conclusion from the Tokyo Family Court on this discovery issue.

In any event, § 1782 does not contain an exhaustion requirement that would impose upon an applicant a duty to first seek the requested discovery from the foreign court. *See Malev*, 964 F.2d at 100. The fact that Reiko requested relief under § 1782 without seeking further relief in Japan therefore does not suggest that in doing so Reiko was attempting to circumvent the rules of the foreign tribunal. In addition, as discussed above, Takeo has not offered "authoritative proof" that Japanese law prohibits either the gathering of evidence pursuant to § 1782 or its subsequent use or admission, and the Japanese court is free to protect any relevant policies by declining to admit any evidence gathered pursuant to means it deems unacceptable. Finally, actually knowing what information the subpoena targets possess will likely help the Tokyo High Court determine its relevancy.

The Court therefore declines to hold that Reiko's request amounts to an attempt to side-step proof-gathering or other restrictions in the Japanese proceedings.

### 4. Unduly Intrusive or Burdensome Request

The final *Intel* factor asks courts to be mindful of overly intrusive or burdensome discovery requests. *Intel*, 542 U.S. at 264–65. "[A] district court evaluating a [Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Furthermore, the Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa*, 51 F.3d at 1101; *see also Malev*, 964 F.2d at 102 (Section 1782 and Federal Rule of Civil Procedure 26 furnish district courts with broad discretion to impose reasonable limitations upon discovery).

Takeo insists that Reiko has "obtained all necessary information within the jurisdiction of Japan" since he disclosed his financial information "in compliance with the scope set forth by the [Tokyo Family] Court." *See* Opp. at 4, 7. Takeo thus objects to the scope of the subpoenas, arguing that they are unduly burdensome because Reiko seeks broad discovery from five entities across 22 years, "nearly 14 extra years after their date of separation" and "even beyond the date of the divorce judgment rendered by the Tokyo Family Court." *See* Opp. at 11–12. Reiko maintains that the proposed subpoenas seek information never provided by Takeo and are narrowly tailored. *See* Pet. Memo at 1; Reiko Aff. at ¶ 13; Reply at 8.

Reiko's allegations concerning Takeo's purportedly secreted assets are plausible enough for the Court to conclude that the proposed subpoenas could uncover information that would bear on her appeal of the Tokyo Family Court's divorce judgment. Indeed, the subpoenaed parties are uniquely positioned to provide corroborating information. Given that it appears the Tokyo High Court can consider "all circumstances" up to the time of oral argument, the Court does not believe any temporal limitation to the scope of the subpoenas is appropriate at this time.

Finally, in reviewing the proposed subpoenas, the Court does not believe that they are unduly intrusive or burdensome. It appears disingenuous for Takeo to protest the burden of the requests *addressed to the subpoena targets* when none of them have intervened (though they have all been served with the Application). In any event, nothing in the Court's opinion precludes these entities from filing objections to the subpoenas, which would permit further tailoring on a per-request basis. As § 1782(a) provides that discovery conducted pursuant to the statute must comply with the Federal Rules of Civil Procedure unless otherwise directed by the Court, and Reiko's proposed subpoenas provide the text of Rule 45(c)–(d), the Court is persuaded that this will further the "twin aims" of the statute while encouraging a targeted approach to discovery.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the statutory requirements of

§ 1782 have been satisfied and that the discretionary factors weigh in favor of

allowing Reiko's request for discovery.  Accordingly, the Application is granted.

**SO ORDERED.**

Dated:  June 3, 2019
      New York, New York

_____
JAMES L. COTT
United States Magistrate Judge